GEOFFREY C. CHACKEL, ESQ. (Bar No. 207085)
geoff@chackellaw.com
CHACKEL LAW, PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
TEL: 619.567.2454
FAX: 619.452.1212
Attorney for Plaintiff TAMMY L. OLUVIC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY L. OLUVIC, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AZUSA PACIFIC UNIVERSITY, a California Corporation,<br><br>Defendant | CASE NO. **'18CV0983 L    KSC**<br><br>COMPLAINT FOR:<br><br>1. UNLAWFUL CONSTRUCTIVE TERMINATION [42 U.S.C. § 2000e-2(a)(1)];<br><br>2. SEXUAL HARASSMENT [42 U.S.C. § 2000e-2(a)(1)];<br><br>3. UNLAWFUL SEX DISCRIMINATION [42 U.S.C. § 2000e-2(a)(1)];<br><br>4. RETALIATION [42 U.S.C. § 2000e-3(a)];<br><br>5. RETALIATION [Cal. Labor Code §1102.5];<br><br>6. WRONGFUL CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>[JURY TRIAL DEMANDED] |

COMPLAINT

Plaintiff TAMMY OLUVIC brings this Complaint against the above-named Defendant, and in support thereof alleges the following:

1. Plaintiff TAMMY OLUVIC ("Plaintiff" or "Ms. Oluvic") is and at all relevant times alleged herein was a female citizen of the United States of America, a resident of San Diego County, California and an employee of Defendant AZUSA PACIFIC UNIVERSITY within the meaning of 42 U.S.C. §§2000e-(f).

2. Defendant AZUSA PACIFIC UNIVERSITY ("Azusa" or "Defendant") is and at all times alleged herein was a California Corporation with its principal place of business in the State of California and which conducted business throughout the State of California, including the Southern District of California and San Diego County. At all relevant times, Azusa has continuously employed at least fifteen (15) employees and has been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. §§2000e-(b), (g), and (h).

**VENUE AND JURISDICTION**

3. Jurisdiction of this Court is invoked pursuant to Article III, § 2 of the United States Constitution, pursuant to 28 U.S.C. § 1331 and pursuant to 42 U.S.C. § 2000e-5(f).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

5. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of California as Plaintiff's injuries were incurred within this jurisdiction, Plaintiff performed employment services within this jurisdiction, and the actions giving rise to Plaintiff's Complaint substantially arose within this jurisdiction. Therefore, in accordance with 28 U.S.C. § 1391 and 42 U.S.C. § 2000(e)-5(f), venue is appropriate in this Court.

**FACTUAL ALLEGATIONS**

6. Plaintiff is a female and commenced employment with Azusa on or about October 5, 2009 as a Risk Coordinator within Azusa's Office of Human Resources. Plaintiff commenced employment based upon an hourly wage and was classified as a non-exempt employee. Plaintiff dutifully performed her job duties and responsibilities in this role during the course of her

employment with Azusa and received positive job reviews.

7. In November 2010, Plaintiff applied for the position of Director of Military Recruitment and Enrollment at Azusa. As part of the application process, Plaintiff submitted several letters of recommendation, completed a formal application and understood her prior performance at Azusa would be evaluated as part of the application process.

8. On or about February 4, 2011, Plaintiff was promoted to the position of Director of Military Recruitment and Enrollment at Azusa (the "Director"). This was a significant promotion for Plaintiff both in terms of pay, title and responsibility as she was now designated a full-time exempt employee paid through a monthly salary.

9. Plaintiff's job duties as the Director required her to focus on establishing new markets within the military for the educational programs offered through the Azusa Pacific regional centers and all applicable school programs. As the Director, she was the Azusa representative responsible for leading and directing military recruitment efforts at the university and managing her department's budget and employees / volunteers.  At no time did Plaintiff perform ministerial services, have any theological training, or otherwise supervise, oversee or support any religious ceremony or teaching at Azusa Pacific. Plaintiff dutifully performed her job duties and responsibilities in this role during the course of her employment with Azusa and received positive job reviews.

10. On or about July 1, 2014, Plaintiff received a raise to her monthly compensation as recognition for her valuable contributions to Azusa.

11. On or about July 1, 2015, Plaintiff entered a Telecommuting Agreement with Azusa that allowed her to perform all of her job duties from home, which was located in San Diego County, California, and allowed her to avoid the long commute to work on campus. As part of this agreement, Azusa again gave Plaintiff a raise.

12. During the course of her work as the Director of Military Recruitment and Enrollment, she reported directly to the Executive Director of Office of Military Veterans Services at Azusa (the "Executive Director"). The Executive Director was an authorized employee of Defendant and the direct supervisor of Plaintiff with immediate authority over

Plaintiff able to undertake or recommend tangible employment decisions affecting Plaintiff and able to direct Plaintiff's daily work activities.

13. Sometime in early 2016, Azusa advised Plaintiff it was interviewing Mr. Everette Brooks, an African-American male, for the position of Executive Director. As a result, Plaintiff travelled to the Azusa campus to meet Mr. Brooks for his final interview, during which Mr. Brooks boldly commented to Plaintiff that he had seen a lot of "beautiful women" on campus and had even seen a "hot Asian woman" but "didn't want to get caught looking." Plaintiff communicated these comments to Azusa but they were ignored.

14. Thereafter, Azusa hired Mr. Brooks as its new Executive Director, which meant Ms. Oluvic was under his direct supervision.

15. Shortly after being hired, Mr. Brooks continued making highly inappropriate and sexist comments about women directly to Ms. Oluvic, including that he saw a lot of "beautiful women" on campus and, again, had seen a "hot Asian woman," this time making a grunting sound after this comment.

16. On or about June 21, 2016, Ms. Oluvic and Mr. Brooks attended a meeting at the San Diego Regional Center wherein Mr. Brooks became very upset with Ms. Oluvic for unknown reasons and began yelling at her when she handed him a portable table to put into his vehicle for the event. Specifically, Mr. Brooks yelled at her that he is "not a fucking grunt" and should not have to put the table into his BMW as this was Ms. Oluvic's job. In addition, Mr. Brooks yelled at Ms. Oluvic that it was unfair he didn't have an assistant, and that Military & Veterans Department was a joke. Mr. Brooks continued berating Plaintiff for reasons wholly unrelated to her performance or conduct and continued as they rode in an elevator together—causing Ms. Oluvic to begin crying and ask that Mr. Brooks please step away from her as she exited the elevator. Mr. Brooks yelled so loud at her that others in a different room could hear him in the elevator. Mr. Brooks refused to leave Ms. Oluvic alone or otherwise stop his abusive behavior.

17. During a subsequent meeting that afternoon attended by Mr. Brooks and several subordinate female employees, they were discussing several topics about the department including content for the ongoing newsletter distributed within Azusa, when Mr. Brooks

dismissed one female's suggestions and said she should include her "favorite baking recipe" in the newsletter rather than the serious content she was proposing.

18.   A few days later, Mr. Brooks texted Ms. Oluvic whether she had reported his conduct to anyone at Azusa, sending the message she would be retaliated against if she did so.

19.   Thereafter, Ms. Oluvic was subjected to an extensive and protracted pattern of harassment, abuse and intimidation by Mr. Brooks that ultimately led to her forced resignation in October 2017. For example, Mr. Brooks repeatedly referred to "hot women" on campus and frequently made grunting noises after making those, and other sexually suggestive, comments as an indication of his sexual desire for such women. This conduct made Ms. Oluvic extremely uncomfortable and communicated to her that Mr. Brooks valued sexual attraction as an important aspect of the workplace environment.

20.   Mr. Brooks would routinely make sexist and degrading comments about women in general in front of Ms. Oluvic and others who later complained to Ms. Oluvic and likewise felt offended and intimidated by Mr. Brooks' conduct.

21.   Mr. Brooks would also routinely judge Ms. Oluvic's performance for reasons wholly unrelated to her actual work by prefacing such comments with "I know you are a woman but . . ." and proceed to explain what she had purportedly done wrong. These comments communicated to Ms. Oluvic, and other female employees, that women were judged by Mr. Brooks under a different standard than men, that Mr. Brooks believed that women (including Ms. Oluvic) were inferior to men, and that Mr. Brooks possessed sexist and misogynistic gender stereotypes that influenced his supervision, treatment and perception of female employees including Ms. Oluvic. Mr. Brooks made no such sexist or demeaning comments towards male staff members or colleagues.

22.   Mr. Brooks also routinely made sexist remarks to Ms. Oluvic when criticizing her work performance such as "You didn't return my emails probably because you are getting your nails done," or "I couldn't reach you because you are probably tanning at the Hotel Del," or "you weren't available probably because you were getting your hair done." All of these comments were made for the purpose of demeaning and degrading Ms. Oluvic based upon her gender and

1  this conduct continued throughout her employment at Azusa.

2      23.   Mr. Brooks also routinely exhibited disgust, disdain, anger and hostility towards Ms. Oluvic and other females and subjected her to heightened and different performance standards than male employees, who were generally treated with respect.

3      24.   On or about November 7, 2016, Plaintiff complained to Defendant's Human Resource Department orally and in writing about the harassment and abuse she was receiving from Mr. Brooks which included the use of highly sexist and misogynistic terms that are demeaning to Plaintiff and women in general.

4      25.   Thereafter, Plaintiff also met in person with Defendant's Human Resource Department to make additional complaints about the unequal treatment and dual standards applicable to women that Mr. Brooks did not apply to men. Plaintiff also identified numerous female colleagues and witnesses to support her claims.

5      26.   On or about March 21, 2017, Defendant's Human Resource Department issued a finding that Mr. Brooks, in its opinion, had not engaged in any inappropriate behavior but the feedback from Ms. Oluvic and other females "were helpful in understanding Mr. Brooks' style." This communicated to Ms. Oluvic and others that using sexist and demeaning language towards women, subjecting them to a different standard than men, and generally using abusive and hostile language and tone towards women was a matter of personal "style" and did not amount to workplace harassment in the eyes of the university. Ms. Oluvic subsequently learned that Human Resources did not interview the witnesses she identified as having highly relevant information to her complaints and that Azusa intended to look the other way and ignore this conduct because of Mr. Brooks' status as an African-American minority employee and the pressure to retain such employees was extremely high due to intense political pressure from within and without the university.

6      27.   Thereafter, Mr. Brooks retaliated against Ms. Oluvic for making her complaint to Human Resources by increasing his hostility, unfair criticism and demeaning behavior through repeated and ongoing comments and conduct designed to make her work life as miserable as possible.

28. When Mr. Brooks wasn't making outright sexist and degrading comments about women in front of Plaintiff and others, he subjected Plaintiff to a different standard than male employees through highly abusive and profane language in the workplace and relentlessly criticized her for trivial matters for the purpose of "setting her up to fail" so he could generate grounds for termination of her employment. For example, Mr. Brooks would subject Ms. Oluvic to hostile and generally abusive conduct over trivial matters whereas Mr. Brooks treated male colleagues with general respect and dignity concerning those same issues. In fact, Ms. Oluvic was advised that other women that worked with Mr. Brooks had also complained to the Human Resource Department about similar conduct, but nothing was done to protect them either.

29. Mr. Brooks became so upset with Plaintiff that he would call her at home to berate her for trivial or made up matters and would even make fun of, and mock her disability, which was diagnosed by a physician as Adult ADD.

30. Mr. Brooks would also connect his trivial criticisms with her performance reviews so as to intimidate her and threaten her future job security. For example, in meetings with Ms. Oluvic, Mr. Brooks would raise his voice at Ms. Oluvic over trivial matters and then suddenly turn his attention to a male colleague in a cordial and polite manner. If a male employee was talking to Ms. Oluvic during a group meeting, Mr. Brooks would publicly admonish and belittle Ms. Oluvic while exonerating the male employee from any wrongdoing. When Ms. Oluvic called in for meetings (due to her telecommuting status), she would be disconnected from those calls and be blamed by Mr. Brooks for not attending only to learn from others that Mr. Brooks had intentionally hung up on her or clearly pretended to not understand how to work the conference call function. Mr. Brooks would also refuse to tell Ms. Oluvic which work related events he expected her to attend and then criticize her for not attending the events he preferred. Mr. Brooks would then mention these issues as factors for jeopardizing her employment status in upcoming performance reviews.

31. In addition, Mr. Brooks chose to deliver such criticisms in a demeaning and abusive tone in order to harm Ms. Oluvic and force her to quit due to her sex and in retaliation for complaining about his conduct to Human Resources.

32. Mr. Brooks' pattern of ongoing conduct was so severe and pervasive that Ms. Oluvic was scared to be alone in the same room as Mr. Brooks and her health began deteriorating as she suffered from high anxiety, sleeplessness, worry, embarrassment and shame over her treatment by Mr. Brooks. This conduct continued in this matter through October 2017, when Ms. Oluvic tendered her resignation by explaining that she simply could not work under the supervision of Mr. Brooks any longer and was forced to quit.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

33. Within 180 days of her constructive discharge, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and also with the California Department of Fair Employment of Housing. The EEOC issued a "Notice of Right to Sue" on April 5, 2018, entitling an action to be commenced within ninety (90) days of receipt of that notice.

34. This action has been commenced within ninety (90) days of Ms. Oluvic's receipt of the "Notice of Right to Sue."

**FIRST CAUSE OF ACTION**

Wrongful Constructive Termination – 42 U.S.C. § 2000e-3(a)(1)

(Against Defendant Azusa)

35. Plaintiff re-alleges and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

36. Plaintiff is an "employee" of Defendant Azusa as that term is defined by 42 U.S.C. section 2000e-(f). At no time did Plaintiff's job duties include religious instruction or carrying on the religious activities of Azusa.

37. At all relevant times, Azusa has continuously employed at least fifteen (15) employees and has been an "employer" engaged in an industry affecting commerce within the meaning of 42 U.S.C. §§2000e-(b), (g), and (h).

38. 42 U.S.C. section 2000e-3(a)(1) makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's sex or gender.

39. Mr. Brooks was an authorized employee of Defendant and the direct supervisor of Plaintiff with immediate authority over Plaintiff able to undertake or recommend tangible employment decisions affecting Plaintiff and able to direct Plaintiff's daily work activities.

40. Defendant Azusa discriminated against Plaintiff on the basis of Plaintiff's sex in violation of 42 U.S.C. section 2000e-3(a)(1) through the numerous illegal acts alleged above in this Complaint including but not limited to unwelcome and unsolicited sexist and demeaning comments based upon sex and hostile and abusive treatment towards Plaintiff based upon, and motivated by, sex.

41. Defendant's conduct made the working conditions for Plaintiff so intolerable and unbearable that a reasonable employee would feel compelled to resign and, in fact, caused Plaintiff to resign from her employment with Defendant in October 2017.

42. Defendant failed to exercise reasonable care in preventing the harassment and failed to take corrective measures after Plaintiff complained of the harassment. As a proximate result of Azusa's conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages (back pay and front pay), lost bonuses and lost benefits. The amount of Plaintiff's damages will be ascertained at trial.

43. In addition, Plaintiff has suffered and will continue to suffer physical and emotional injuries, including increased blood pressure, nervousness, humiliation, depression, anguish, embarrassment, shock, discomfort, fatigue, sleeplessness and elevated anxiety.

44. In committing the foregoing acts, Defendant has been guilty of malice or reckless indifference towards Plaintiff's federally protected rights thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendant. The acts of malice or reckless indifference were engaged in by officers, directors and/or trustees of Azusa which ratified and authorized the wrongful conduct for which an award of punitive damages is sought.

45. Plaintiff has incurred, and will continue to incur, costs and attorneys' fees to prosecute this action and requests this Court award recovery of all such current and future reasonable attorneys' fees and costs incurred in this action according to applicable law.

## SECOND CAUSE OF ACTION

Sexual Harassment – 42 U.S.C. § 2000e-2(a)(1)

(Against Defendant Azusa)

46. Plaintiff re-alleges and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

47. On a consistent basis during Plaintiff's employment with Azusa, Plaintiff was subjected to sexual harassment by her supervisor, Everette Brooks.

48. Plaintiff was obligated to work in an atmosphere that was hostile by virtue of unsolicited and unwelcome sexual comments, grunting noises, sexual innuendo, and other sex-based conduct including unfair, abusive, hostile and unequal treatment of Plaintiff based upon sex.

49. This sexual harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile working environment that was intimidating, insulting and abusive to Plaintiff and other employees.

50. Because of Defendant's failure to take prompt and remedial action, and its deliberate indifference to sexually hostile conduct, Defendant has intentionally engaged in unlawful employment practices in violation of Title VII.

51. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise resulted in tangible adverse employment action and adversely affected her status as an employee because of sex.

52. In addition, Defendant's conduct made the working conditions for Plaintiff so intolerable and unbearable that a reasonable employee would feel compelled to resign and, in fact, caused Plaintiff to resign from her employment with Defendant in October 2017.

53. Defendant failed to exercise reasonable care in preventing the harassment and failed to take corrective measures after Plaintiff complained of the harassment. As a direct and proximate result of Azusa's conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages (back pay and front pay), lost bonuses and lost benefits.

54. Plaintiff has also suffered and will continue to suffer emotional injuries, including

increased anxiety, nervousness, humiliation, depression, anguish, embarrassment, shock, discomfort, fatigue, sleeplessness and loss of appetite.

55. In committing the foregoing acts, Defendant has been guilty of malice or reckless indifference towards Plaintiff's federally protected rights thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendant. The acts of malice or reckless indifference were engaged in by officers, directors and/or trustees of Azusa which ratified and authorized the wrongful conduct for which an award of punitive damages is sought.

56. Plaintiff has incurred, and will continue to incur, costs and attorneys' fees to prosecute this action and requests this Court award recovery of all such current and future reasonable attorneys' fees and costs incurred in this action according to applicable law

## THIRD CAUSE OF ACTION

Unlawful Sex Discrimination—42 U.S.C. § 2000e-2(a)(1)

(Against Defendant Azusa)

57. Plaintiff re-alleges and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

58. 42 U.S.C. section 2000e-3(a)(1) makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's sex or gender.

59. Defendant Azusa discriminated against Plaintiff on the basis of Plaintiff's sex in violation of 42 U.S.C. section 2000e-3(a)(1) through the numerous illegal acts alleged above in this Complaint including but not limited to unwelcome and unsolicited sexist and demeaning comments based upon sex and hostile and abusive treatment towards Plaintiff based upon, and motivated by, sex.

60. Defendant's conduct resulted in tangible employment action against Plaintiff and ultimately made the working conditions for Plaintiff so intolerable and unbearable that a reasonable employee would feel compelled to resign and, in fact, caused Plaintiff to resign from her employment with Defendant in October 2017.

61. As a proximate result of Azusa's conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages (back pay and front pay), lost bonuses and lost benefits. The amount of Plaintiff's damages will be ascertained at trial.

62. In addition, Plaintiff has suffered and will continue to suffer physical and emotional injuries, including increased blood pressure, nervousness, humiliation, depression, anguish, embarrassment, shock, discomfort, fatigue, sleeplessness and elevated anxiety.

63. In committing the foregoing acts, Defendant has been guilty of malice or reckless indifference towards Plaintiff's federally protected rights thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendant. The acts of malice or reckless indifference were engaged in by officers, directors and/or trustees of Azusa which ratified and authorized the wrongful conduct for which an award of punitive damages is sought.

64. Plaintiff has incurred, and will continue to incur, costs and attorneys' fees to prosecute this action and requests this Court award recovery of all such current and future reasonable attorneys' fees and costs incurred in this action according to applicable law.

**FOURTH CAUSE OF ACTION**

Retaliation – 42 U.S.C. 2000e-3(a)

(Against Defendant Azusa)

65. Plaintiff re-alleges and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

66. 42 U.S.C. section 2000e-3(a) makes it an unlawful practice for an employer to discriminate against an employee because she has opposed any unlawful employment practice under Title VII.

67. As alleged above, Plaintiff, and other female colleagues, complained directly to Azusa's human resource department about the illegal conduct of her supervisor, Mr. Brooks. Not only did Azusa fail to properly or completely investigate Plaintiff's complaints, but those complaints were ignored and then Mr. Brooks commenced a pattern and practice of retaliating against Plaintiff for initiating, and participating in, a complaint about his sexual harassment and

discriminatory conduct towards her and other women.

68. Plaintiff's complaints were made to persons with authority over Plaintiff and who had the authority to investigate, discover, and correct the violation and/or non-compliance. Said activities would result in violation of Federal statutes and Azusa's formal policies prohibiting such conduct.

69. By the aforesaid acts and omissions of Defendant, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, her constructive discharge, loss of earnings, damages, costs of suit and other loss in an amount not presently ascertained but to be proven at trial.

70. In addition, Plaintiff has suffered and will continue to suffer physical and emotional injuries, including increased blood pressure, nervousness, humiliation, depression, anguish, embarrassment, shock, discomfort, fatigue, sleeplessness and elevated anxiety.

71. In committing the foregoing acts, Defendant has been guilty of malice or reckless indifference towards Plaintiff's federally protected rights thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendant. The acts of malice or reckless indifference were engaged in by officers, directors and/or trustees of Azusa which ratified and authorized the wrongful conduct for which an award of punitive damages is sought.

72. Plaintiff has incurred, and will continue to incur, costs and attorneys' fees to prosecute this action and requests this Court award recovery of all such current and future reasonable attorneys' fees and costs incurred in this action according to applicable law.

**FIFTH CAUSE OF ACTION**

Retaliation – California Labor Code § 1102.5

(Against Defendant Azusa)

73. Plaintiff re-alleges and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

74. California Labor Code section 1102.5, subdivision (b), makes it unlawful for "an employer, or any person acting on behalf of the employer" to retaliate against an employee for

disclosing information of noncompliance with a local, state or federal rule or regulation.

75. As alleged above, and in violation of California Labor Code section 1102.5, Defendant retaliated against Plaintiff for complaining about activities that she had reasonable cause to believe constituted a violation of California state laws, rules and regulations such as California Government Code Section 12940, *et. seq.*, and 42 U.S.C. section 2000e-2(a)(1).

76. Plaintiff's complaints were made to persons with authority over Plaintiff and who had the authority to investigate, discover, and correct the violation and/or non-compliance. Said activities would result in violation of the California statutes and Azusa's formal policies alleged herein.

77. By the aforesaid acts and omissions of Defendant, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, damages, costs of suit and other loss in an amount not presently ascertained but to be proven at trial.

78. In addition, Plaintiff has suffered and will continue to suffer physical and emotional injuries, including increased blood pressure, nervousness, humiliation, depression, anguish, embarrassment, shock, discomfort, fatigue, sleeplessness and elevated anxiety.

79. In committing the foregoing acts, Defendant has been guilty of oppression, fraud, and/or malice under California Civil Code section 3294 in conscious disregard of Plaintiff's rights thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendant. The acts of oppression, fraud, and/or malice were engaged in by officers, directors and/or trustees of Azusa which ratified and authorized the wrongful conduct for which an award of punitive damages is sought.

80. The foregoing acts and omissions of Defendant justify the imposition of any and all civil penalties pursuant to Section 1102.5(f) of the California Labor Code along with attorneys' fees and costs of suit as provided in Section 1021.5 of the California Code of Civil Procedure.

///

///

## SIXTH CAUSE OF ACTION

Wrongful Constructive Termination in Violation of Public Policy

(Against Defendant Azusa)

81. Plaintiff re-alleges and incorporates by reference the allegations of each of the preceding paragraphs as if fully set forth herein.

82. At all times during her employment with Azusa, Plaintiff performed her duties with the utmost diligence and competence.

83. As alleged above, Defendant's conduct as alleged herein was motivated by Plaintiff's sex and complaints to Azusa of illegal and unlawful discriminatory conduct. The reasons offered by Defendant for refusing to protect Plaintiff from Mr. Brooks' conduct were, and are, pretextual in nature and Defendant intentionally engaged in the foregoing acts in an attempt to force Plaintiff to resign.

84. As alleged herein, Defendant discriminated against Plaintiff in the terms and conditions of employment in violation of important and well established public policies, as set forth in Article I, Section 8 of the California Constitution, California Government Code section 12940, et seq., and 42 U.S.C. section 1981, which mandate that employees be free from unlawful discrimination, retaliation and other adverse employment actions based upon race, gender and color (among others).

85. Defendant's conduct made the working conditions for Plaintiff so intolerable and unbearable that a reasonable employee would feel compelled to resign and, in fact, caused Plaintiff to resign from her employment with Defendant in October 2017.

86. As a proximate result of the conduct of Azusa, Plaintiff has suffered and will continue to suffer special damages in the form of lost wages, future lost earnings, lost bonuses, lost benefits, out of pocket expenses and other pecuniary loss according to proof at trial.

87. In addition, Plaintiff has suffered and will continue to suffer physical and emotional injuries, including increased blood pressure, nervousness, humiliation, depression, anguish, embarrassment, shock, discomfort, fatigue, sleeplessness and elevated anxiety.

88. In committing the foregoing acts, Defendant has been guilty of oppression, fraud,

and/or malice under California Civil Code section 3294 in conscious disregard of Plaintiff's rights thereby entitling Plaintiff to punitive damages in a sum appropriate to punish and make an example out of Defendant. The acts of oppression, fraud, and/or malice were engaged in by officers, directors and/or trustees of Azusa which ratified and authorized the wrongful conduct for which an award of punitive damages is sought.

WHEREFORE, PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

1. For general damages, including front pay and back pay, according to proof on each cause of action for which damages are available in an amount to be proven at trial;
2. For special damages, according to proof on each cause of action for which such damages are available in an amount to be proven at trial;
3. For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available, in an amount to be proven at trial;
4. For punitive damages according to proof on each cause of action for which such damages are available;
5. For declaratory and injunctive relief as appropriate;
6. For prejudgment interest and post-judgment interest according to law;
7. For reasonable attorneys' fees incurred in this action according to law;
8. For costs of suit incurred in this action according to law;

///
///
///
///
///
///
///
///
///

1      9.  For such other and further relief as the Court deems proper and just.

2

3   DATED: May 17, 2018.                    CHACKEL LAW, PC

4

5                                          By: /s/ Geoffrey C. Chackel, Esq.
                                                   GEOFFREY C. CHACKEL, ESQ.

6                                                    Attorney for Plaintiff

7

8   **DEMAND FOR JURY TRIAL**

9       Plaintiff demands a trial by jury as to all issues so triable.

10   DATED:  May 17, 2018                     CHACKEL LAW, PC

11

12                                          By: /s/ Geoffrey C. Chackel, Esq.
                                                 GEOFFREY C. CHACKEL, ESQ.

13                                                   Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT