UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY L. OLUVIC, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AZUSA PACIFIC UNIVERSITY, a California Corporation,<br><br>Defendant. | Case No.: 3:18-CV-983-L-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

In this employment discrimination action, Defendant Azusa Pacific University ("APU") filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Tammy L. Oluvic ("Oluvic") opposed, and APU replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1.d.1. For the reasons stated below, Defendant's motion is denied.

**I.  BACKGROUND**

According to the complaint, APU hired Oluvic in October 2009 as a Risk Coordinator within APU's Human Resources Department ("HR"). Compl. ¶ 6. In February 2011, after receiving positive job reviews, APU promoted Oluvic to Director of Military Recruitment and Enrollment. *Id.* ¶¶ 6-8. Oluvic received two raises in her monthly compensation in 2014 and 2015. *Id.* ¶¶ 10-11. Around July 2015, Oluvic

1

entered into a Telecommuting Agreement with APU, which allowed her to work from home. *Id.* ¶ 11. As Director of Military Recruitment and Enrollment, Oluvic reported directly to the Executive Director of the Office of Military Veterans Services ("Executive Director"). *Id.* ¶ 12.

In early 2016, Oluvic met Everette Brooks ("Brooks") during his final interview for APU's Executive Director position. *Id.* ¶ 13. During this encounter, Brooks commented to Oluvic that he had seen many "beautiful women" on campus as well as a "hot Asian woman" but "didn't want to get caught looking." *Id.* Oluvic relayed these comments to APU, but no action was taken. *Id.*

After APU hired Brooks as Executive Director, Brooks continued making similar comments to Oluvic and occasionally made grunting sounds after making such comments. *Id.* ¶¶ 15, 19. Brooks' behavior, which also included yelling at and berating Oluvic, included gender based remarks such as:

- "I couldn't reach you because you are probably tanning at the Hotel Del."
- "You weren't available probably because you were getting your hair done."
- "I know you are a woman but . . ."
- "You didn't return my emails probably because you are getting your nails done."

*Id.* ¶¶ 21-22. Brooks exhibited similar behavior and hostility towards other female employees, but acted in no such way towards male employees. *Id.* ¶ 23.

Brooks' behavior caused Oluvic to cry in June 2016 while they rode in an elevator. *Id.* ¶ 16. A few days later, Brooks sent Oluvic a text message asking whether she reported this conduct to anyone at APU. *Id.* ¶ 18.

Around November 7, 2016, Oluvic complained to HR orally and in writing about Brooks' behavior. *Id.* ¶ 24. Oluvic also met in person with someone from HR to make additional complaints about Brooks and to identify numerous female colleagues and witnesses to support her claims. *Id.* ¶ 25.

Around March 21, 2017, HR issued a finding that Brooks had not engaged in any inappropriate behavior, but that the information from Oluvic and other female employees

was "helpful in understanding Mr. Brooks' style." *Id.* ¶ 26. Oluvic also learned that HR did not interview any of the witnesses she had identified. *Id.* After this finding from HR, Oluvic experienced increased hostility and criticism from Brooks, which continued until her resignation in October 2017. *Id.* ¶¶ 26-32, 67. Oluvic explained to APU that she resigned because she could no longer work under Brooks' supervision. *Id.* ¶ 32.

Within one hundred and eighty days of resignation, Oluvic filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the California Department of Fair Employment of Housing. On April 5, 2018, the EEOC issued a Notice of Right to Sue, entitling her to file an action within ninety days of receipt of that notice. Oluvic filed her complaint on May 17, 2018. The Court has subject matter jurisdiction pursuant to Article III, §2 of the United States Constitution, 28 U.S.C. § 1331, and 42 U.S.C. § 2000e-5(f). The Court has supplemental jurisdiction over Oluvic's state law claims pursuant to 28 U.S.C. § 1367.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998).

## III. DISCUSSION

APU contends that all six of Oluvic's causes of action should be dismissed because they are vague, conclusory, and fail to state a claim upon which relief can be granted. Oluvic counters that each cause of action meets the pleading standard under Rule 8(a)(2) and that APU attempts to minimize Brooks' behavior as simply "boorish." Opp'n (doc. no. 13) at 1. For the reasons stated below, APU's motion is denied.

### A. First Cause of Action for Unlawful Constructive Termination in Violation of 42 U.S.C. § 2000e-2(a)(1)

APU alleges that Oluvic's Title VII constructive termination claim should be dismissed because: (1) it is not a freestanding cause of action; (2) it is redundant with Oluvic's sixth cause of action for wrongful constructive termination in violation of public policy; and (3) it fails to state a claim for relief.[1] To establish a claim for constructive termination under Title VII, an employee must prove "(1) he or she suffered harassment or discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign . . .; and (2) the employee's reaction to the workplace situation-that is, his or her decision to resign-was reasonable given the totality of circumstances." *Pa. State Police v. Suders*, 542 U.S. 129, 139 (2004) (internal quotation marks and citation omitted).

First, APU argues that constructive discharge is not a freestanding cause of action. This argument was rejected in *Green v. Brennan*, which held that "constructive discharge is a claim distinct from the underlying discriminatory act." 136 S. Ct. 1769, 1773 (2016).

---

[1] Throughout its briefs, APU almost exclusively relies on federal district court cases, appellate cases from outside the Ninth Circuit, and unpublished Ninth Circuit cases. None are binding authority. *Camreta v. Greene,* 563 U.S. 692, 709 n.7 (2011) (district court opinions); *In re Amy,* 710 F.3d 985, 987 (9th Cir. 2013) (out-of-circuit appellate decisions); 9th Cir. Rule 36-3(a) (unpublished Ninth Circuit opinions); *see also Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,* 890 F.3d 828, 833 (9th Cir. 2018) (same).

4

Second, APU argues that Oluvic's Title VII constructive termination claim is redundant of her sixth cause of action under California law for wrongful constructive termination in violation of public policy. Oluvic counters that the claims are not redundant because they provide for different remedies, including the availability of statutory attorneys' fees. Rule 8(d)(2) explicitly allows for pleading in the alternative. Furthermore, even if the claims were duplicative or superfluous, this would not be sufficient grounds for dismissal. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

Third, APU contends that the first cause of action is insufficiently alleged to state a claim. According to APU, "unwelcome and unsolicited sexist and demeaning comments based upon sex," together with Oluvic's continued employment until October 2017, do not establish intolerable or aggravating working conditions. Mot. (doc. no. 9-1) at 8. APU argues that because Oluvic did not resign for eleven months after complaining to HR in November 2016, her working conditions were not objectively intolerable. Contrary to APU's argument, the complaint alleges that Brooks' inappropriate comments and hostile behavior started in early 2016 and *continued* until Oluvic's resignation in October 2017. Compl. ¶¶ 13-32. For purposes of constructive termination, the conditions must be assessed in their totality. *Suders*, 542 U.S. at 139. Furthermore, "incidents of differential treatment over a period of months or years" are sufficient to establish a claim of constructive discharge. *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987). Accordingly, the pattern of conduct alleged in the complaint is adequate to establish a claim for constructive discharge at the pleading stage. For the foregoing reasons, APU's arguments to dismiss the first cause of action are rejected.

**B.** **Second Cause of Action for Sexual Harassment in Violation of 42 U.S.C. § 2000e-2(a)(1)**

As to the sexual harassment claim, APU contends that Brooks' conduct was not severe or pervasive enough to alter the conditions of Oluvic's employment. To establish a prima facie case of a sexual harassment, a Title VII plaintiff must show that: "(1) she

was subjected to verbal or physical conduct of a sexual nature; (2) this conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (internal quotation marks and citation omitted).

APU maintains that the complaint does not satisfy the third element for three reasons. First, APU argues that the alleged conduct, while perhaps inappropriate, was not severe or pervasive enough to objectively interfere with Oluvic's conditions of employment. Second, most of the comments were made in Oluvic's presence rather than directed at her. Third, Oluvic worked from home and, therefore, her contact with Brooks was "limited at best" and her workplace therefore could not have been permeated with a hostile environment. Mot. at 11.

In determining whether sexual harassment is severe enough to be actionable, a "required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991). In this regard, the Court must look at the totality of the circumstances, which may include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). "The effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive." *Id.*

Oluvic alleges that she was subjected to unwelcome sexual comments, grunting noises, sexual innuendo, and other sex-based conduct including unfair, abusive, hostile, and unequal treatment based upon sex. Compl. ¶ 48. This conduct sometimes occurred in front of other employees, made Oluvic fearful of being alone with Brooks, and caused her to suffer anxiety, sleeplessness, embarrassment, and shame. *Id.* ¶¶ 16, 20, 30, 32.

Brooks was Oluvic's direct supervisor, which implies, as reflected in the complaint, that she was required to interact with him regularly during her employment. *See id.* ¶ 12.

In light of the foregoing, the fact that Oluvic worked from home some of the time does not negate her sexual harassment claim. That some of the alleged sexist comments were not directed at her also does not negate her claim. "[W]hen evidence establishes the employer's animus toward the class to which the plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently small that we have treated the evidence as direct." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 n.6 (9th Cir. 2005); *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005). To the extent Brooks' comments were not directed at Oluvic, they are probative of his discriminatory intent and add support to her sexual harassment claim. Finally, Oluvic's facts are analogous to *Dominguez-Curry*, in which the Court held that sexist comments and "repeated derogatory and humiliating remarks were sufficiently severe or pervasive to create a hostile work environment." 424 F.3d at 1036. For these reasons, APU's motion to dismiss the sexual harassment claim is denied.

### C. Third Cause of Action for Unlawful Sex Discrimination in Violation of 42 U.S.C. § 2000e-2(a)(1)

Next, APU argues that the sex discrimination claim should be dismissed for failure to allege an adverse employment action. To establish a prima facie case of gender discrimination under Title VII, a plaintiff must show that: "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

APU contends that the complaint does not satisfy the third element, which requires a plaintiff to be subjected to an adverse employment action. Specifically, APU claims that Oluvic resigned from employment and therefore cannot show termination, thus negating adverse employment action. As discussed above, Oluvic alleged unlawful

7

constructive termination. This is sufficient to allege an adverse employment action. *Jordan v. Clark*, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988). APU's motion to dismiss the sex discrimination claim is therefore denied.

### D. Fourth and Fifth Causes of Action for Retaliation in Violation of 42 U.S.C. § 2000e-3(a) and Cal. Lab. Code § 1102.5

APU contends that Oluvic's fourth and fifth causes of action for retaliation should be dismissed because they do not establish an adverse employment action or a causal connection between the protected activity and the adverse employment action. To establish a prima facie case of retaliation under Title VII and Cal. Lab. Code § 1102.5, a plaintiff must show: (1) she engaged in a protected activity; (2) an adverse employment action was taken against her; and (3) there is a causal link between the protected activity and the adverse employment action. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004); *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 138 (2007).

First, APU argues that Oluvic cannot establish an adverse employment action because she was not forced to resign. As discussed above, "constructive discharge is an adverse employment action." *Jordan*, 847 F.2d at 1377 n.10. Similarly, California state courts hold that constructive discharge is a materially adverse employment action. *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1253 (2008). As Oluvic has alleged constructive discharge, she also alleged an adverse employment action for purposes of her retaliation claims.[2]

---

[2] APU cites two published Ninth Circuit cases in support of its contention that Oluvic failed to sufficiently allege adverse employment action for purposes of retaliation. (Reply (doc. no. 14) at 10 (citing *Nunez v. City of L.A.,* 147 F.3d 867, 875 (9th Cir. 1998), and *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005)). Under the facts alleged in Oluvic's complaint, neither case supports APU's contention.

*Nunez* involves a different type of retaliation claim -- retaliation by a government employer for the employee's exercise of his First Amendment rights. *Nunez,* 147 F.3d at 869-70. Unlike in the Title VII context, to show adverse employment action, a government employee "must demonstrate the loss of a valuable governmental benefit or

Second, APU claims that both of Oluvic's retaliation claims must be dismissed for lack of causation because her resignation was too remote in time from her HR complaint. To establish causation, a plaintiff must show that "engaging in the protected activity was one of the reasons for [termination] and that but for such activity [he or she] would not have been [terminated]." *Villiarimo*, 281 F.3d at 1065 (internal quotation marks and citation omitted). Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *see also Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 55 (2000).

"[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo*, 281 F.3d at 1065. However, "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (internal quotation marks and citations omitted); *see also*

---

privilege." *Id.,* 147 F.3d at 875 (internal quotation marks, citation and footnote omitted). Further, unlike Oluvic, *Nunez* could not establish constructive termination because he retained his job. *Id.* The basis of his adverse employment action was failure to promote, which the Court found insufficient to meet the standard for retaliation in government employment. *Id.*

Like the pending case, *Hardage* involves a claim of retaliatory constructive discharge in private employment. 427 F.3d at 1180. Unlike the pending case, *Hardage* addressed retaliation on summary judgment, where the Court found the plaintiff's evidence insufficient. *Id.*, 427 F.3d at 1189. "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Id.* (internal quotation marks and citation omitted). Hardage asserted he was retaliated by "snide remarks and threats, such as 'your number's up' and 'don't forget who got you where you are.'" *Id.* As discussed above in the context of constructive termination, Oluvic alleged sufficient facts to show at the pleading stage that Brooks' conduct against her was more than trivial.

*Villiarimo*, 281 F.3d at 1065 (termination must have occurred "fairly soon" after the protected activity; 18-month lapse was "simply too long"); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (8-month gap between complaint and termination "too great" to support an inference of causation). Here, Oluvic resigned eleven months after reporting Brooks to HR. *See* Compl. ¶¶ 24-32.

Oluvic's case, however, is based on more than timing alone. She alleges that in March 2017 HR ruled on her complaint by finding that Brooks had not engaged in any inappropriate behavior. Compl. ¶ 26. She resigned in October 2017 because she experienced increased hostility and criticism from Brooks after HR had released its finding. *Id.* ¶¶ 26-32, 67. She describes in detail Brooks' conduct, its effect on her health and how it led her to resign. These allegations support a reasonable inference that Brooks learned of Oluvic's report to HR, intensified his behavior in response, and drove her to resign, thus establishing, at the pleading stage, a sufficient causal connection between Oluvic's HR complaint and her resignation. APU's arguments for dismissal of the retaliation claims are therefore rejected.

### E. Sixth Cause of Action for Wrongful Constructive Termination in Violation of Public Policy

Finally, APU argues that Oluvic's sixth cause of action under California law for wrongful constructive termination in violation of public policy should be dismissed because the complaint does not allege sufficient facts to establish a constructive discharge. To establish constructive discharge, an employee must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994). As discussed above, Oluvic's allegations are sufficient to state the same claim under Title VII. California law adds a requirement of fundamental public policy. A plaintiff must prove "that his dismissal violated policy that is (1) fundamental, (2)

beneficial for the public, and (3) embodied in a statute or constitutional provision." *Id.* at 1256. A fundamental public policy against job discrimination based on sex is articulated in Cal. Const. Art I, § 8 and Cal. Gov't Code § 12940(a). *Rojo v. Kliger*, 52 Cal. 3d 65, 72. (1990). Therefore, the complaint adequately establishes a claim for wrongful constructive termination in violation of public policy.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion is denied.

**IT IS SO ORDERED.**

Dated: February 15, 2019

_____
Hon. M. James Lorenz
United States District Judge